Submitted January 20; portion of judgment requiring defendant to pay attorney fees reversed, otherwise affirmed December 21, 2016; on appellant's petition for reconsideration filed January 6, reconsideration allowed by opinion March 1, 2017
See 284 Or App 153, 391 P3d 1002 (2017)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## PEDRO CARDENAS VALDEZ,
aka Pedro Cardenasvaldez,
*Defendant-Appellant.*

Clackamas County Circuit Court
CR1300156; A156707

283 P3d 77

Peter Gartlan, Chief Defender, and David O. Ferry, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Paul L. Smith, Deputy Solicitor General, and Karla H. Ferrall, Assistant Attorney General, filed the brief for respondent.

Before Sercombe, Presiding Judge, and Tookey, Judge, and DeHoog, Judge.

## TOOKEY, J.

Defendant appeals a judgment of conviction for two counts of first-degree rape, ORS 163.375, two counts of first-degree sodomy, ORS 163.405, two counts of first-degree unlawful sexual penetration, ORS 163.411, and two counts of first-degree sexual abuse, ORS 163.427. Defendant raises six assignments of error. We write only to address defendant's first, third, and fifth assignments of error, and we reject the remainder without further discussion. In his first assignment of error, defendant argues that the trial court erred when it overruled his objection to "the prosecutor's staging of an emotional statement" by the victim. In his third assignment of error, defendant argues that the trial court erred in denying his motion for judgment of acquittal on the second count of first-degree rape. In his fifth assignment of error, defendant argues that the trial court erred in imposing $16,000 in attorney fees without proof of his ability to pay them. For the reasons that follow, we reverse the portion of the judgment requiring defendant to pay attorney fees and otherwise affirm.

We state separately the facts pertinent to each of defendant's assignments of error. We begin with defendant's third assignment of error—that the trial court erred by denying defendant's motion for judgment of acquittal on the second count of first-degree rape. We state the facts in the light most favorable to the state and review those facts to determine whether a rational trier of fact could have found defendant guilty beyond a reasonable doubt. *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994), *cert den*, 514 US 1005 (1995).

In December 2012, the victim and two of her close friends attended a meeting with a visiting counselor at their high school. During that meeting, one of the victim's friends disclosed that she had been sexually abused, and the counselor told a similar story involving one of the counselor's relatives. The victim then disclosed that, when she was younger, she had been the victim of similar abuse by defendant, her uncle. A few days after the victim's disclosure to the counselor, Officer Lundervold interviewed the victim. The victim told Officer Lundervold that, when she was younger, her

mother would drop her off at defendant's residence so that defendant could babysit her while her mother went to work. The victim told Officer Lundervold that defendant "touched her everywhere on her body," used his hands to touch her breast area, put his fingers into her vagina on more than one occasion, put his penis into her mouth several times, and attempted to put his penis into her vagina "at least twice." The victim explained that, during one of defendant's attempts of putting his penis into her vagina, she did not think that defendant put his penis "all the way in" because she did not remember it hurting.

As part of the state's investigation, the victim visited the Children's Center, where she was interviewed and physically examined. During the interview, the victim stated that defendant had touched her "boobs" underneath her clothing, put his fingers inside her vagina, and, on two occasions, tried to put his penis inside her vagina. The victim told the Children's Center interviewer that "she wasn't sure if [defendant's penis] went in all the way the first time, because it didn't hurt, but the second time [the victim] said it did hurt." The physical examination at the Children's Center revealed that the victim had a transected hymen, leading the evaluator to find that the victim's statements were consistent with the diagnosis of sexual abuse.

At trial, the victim testified and reiterated her previous allegations. When asked whether defendant "enter[ed] [her] vagina with his penis," the victim responded, "he wouldn't do it all the time, but I remember one time he did." Later, the prosecutor used a paper cup to analogize a vagina and asked the victim to distinguish between "touching on top" and "insertion." The victim testified that both—touching and insertion—happened "at least twice." The prosecutor tried to clarify the victim's inconsistent testimony by asking how the victim knew that defendant's penis was inside of her. The victim testified that she knew it was not defendant's fingers inside of her because "it would hurt more," defendant was lying on top of her, and that she was "certain it [happened] only once." Officer Lundervold testified regarding his interview with the victim. The Children's

Center nurse also testified regarding her physical examination of the victim and the interview she had witnessed the victim give at the Children's Center.

At the close of the state's case, defendant moved for a judgment of acquittal on the second count of first-degree rape. As to that motion, the following arguments were made:

"[DEFENSE COUNSEL]:   First, I think there is one that we can't dispute, which is that [the victim] stated on the stand that she had only *** had sexual intercourse once. As the Court is well aware, there are two charges of rape in the first degree that are charged as separate and distinct acts from each other. I think the record was abundantly clear. I made sure on cross-examination she said only once. She said it very, very clearly. 'Yes, I am sure it was only once.'

"*****   .

"[PROSECUTOR]:   [The victim] clearly unequivocally said once. That's inconsistent with what she told the [Children's Center nurse] in some fashion. Or is it? Because the [Children's Center nurse] clarified that only one time it hurt. My interpretation of [the victim's] testimony was she clearly remembers one time, because it really hurt. The other one she seemed to be backing off of, disengaging from, stressing not so much.

"There is evidence there from the testimony from [the Children's Center nurse] that there were two times. This prosecutor is not going to be stressing that evidence. In my closing argument, I will be getting up and telling the jury that they can only find one rape, because I don't think there is sufficient evidence to prove beyond a reasonable doubt two. That's what I intend to do.

"I think that would take care of this problem. There is, in the light most favorable to the State, evidence that suggests that this fact finder could believe that there are two, and the testimony of [the Children's' Center nurse], because that evidence is just as admissible as the direct testimony and witnesses are inconsistent all the time. Child witnesses are inconsistent all the time. There is evidence in the record that this is not uncommon. This is a matter of discretion for the jury; that the fact finder could find from this evidence that there were two."

The trial court denied defendant's motion for judgment of acquittal. During the prosecution's closing argument, the prosecutor argued:

"There were two rape in the first degree charges, and they relate, if you recall, [the Children's Center nurse], the fact as she testified, the interview at the Children's Center, [the victim] talked about two times. One time she wasn't sure it went all the way in, but the second time it hurt more, and she was sure about that.

"You heard [the victim] on the stand say once; only once. That is a conflict in testimony. She said, according to [the Children's Center nurse], at one point it happened twice. She said on the stand it happened once. There is a way to wrestle with that and make truth of it, if you believe [the victim], which is that her uncertainty about whether it went in or not when she was talking at the Children's Center is what she has crystallized in her mind as not being a fair assumption that it may have in fact been completed.

"So [the victim] has rested on one, but I am going to tell you something right off the bat. As a prosecutor, as an officer of the Court, sworn to do justice, I do not think that you should deliberate on two counts of rape. I think you should find not guilty on one of them immediately, because there is a conflict in this testimony where she says it happened twice at the Children's Center, and on the stand she says it happened once and only once.

"I am inviting you. You don't have to follow my lead. This is merely argument. You decide. I am inviting you to deliberate on one count, because I don't believe in good faith I can argue to you that I can prove beyond a reasonable doubt two rapes—penetration of the vagina. If you want to spend time finding that evidence, it is there, but it is more tenuous. * * * But that is up to you."

Before submitting the case to the jury, the court instructed the jury that, "the lawyers' statements and arguments are not evidence."

On appeal, defendant argues that the trial court erred in denying his motion for judgment of acquittal on the second charge of first-degree rape. Defendant contends that, because the victim testified that it "only [happened] once," and the only other evidence was statements made by

Officer Lundervold and the Children's Center nurse, there was insufficient evidence to support a finding beyond a reasonable doubt that defendant actually penetrated the victim's vagina on two occasions. Moreover, defendant argues that the trial court erred in submitting the second charge of first-degree rape to the jury after the state conceded that it had failed to prove that charge. In response, the state argues that the evidence was sufficient to allow a guilty verdict on the second charge of first-degree rape, especially in light of the Children's Center nurse's testimony. The state also contends that it did not concede that a judgment of acquittal should be granted; rather, from the prosecutor's statements "it can be inferred that the prosecutor believed the charge should not be taken from the jury, but at the same time, he did not intend to press the issue in closing argument."

ORS 163.375(1) provides:

"A person who has sexual intercourse with another person commits the crime of rape in the first degree if:

"* * * * *

"(b)   The victim is under 12 years of age."

ORS 163.305(7) defines "sexual intercourse" as having "its ordinary meaning and occurs upon *any penetration, however slight*[.]" (Emphasis added.)

We conclude that the trial court did not err in denying defendant's motion for judgment of acquittal. The victim testified that defendant "entered" her vagina with his penis "one time," that he "insert[ed]" his penis into her vagina "at least twice," and that, as to those two occasions, it hurt only one time. Officer Lundervold testified that the victim initially reported that defendant attempted to put his penis into her vagina "at least twice," but that, as to one occasion, she was not sure that defendant's penis was "all the way in" because she did not remember it hurting. Similarly, the Children's Center nurse testified that, during the interview at the Children's Center, the victim told the interviewer that "she wasn't sure if [defendant's penis] went in all the way the first time, because it didn't hurt, but the second time [the victim] said it did hurt." The Children's Center nurse also testified that the physical examination of the victim

revealed that she had a transected hymen, consistent with the victim's reports of sexual abuse. The victim consistently reported and testified that defendant attempted to insert his penis into her vagina "at least twice," but that on one of those occasions, she was unsure that his penis was completely inside of her vagina. This presents a question of degree of penetration, not whether penetration actually occurred. Thus, despite the victim's inconsistent testimony regarding the degree of penetration, because "sexual intercourse" is defined in ORS 163.305(7) as *any penetration, however slight*" (emphasis added), there was sufficient evidence for a rational trier of fact to find beyond a reasonable doubt that defendant committed two counts of first-degree rape. *See State v. Wolfe*, 56 Or App 795, 800, 643 P2d 404 (1982) (holding that there was sufficient evidence of penetration to sustain conviction for first-degree rape even though testimony of the victim was equivocal and fraught with inconsistencies).

As part of defendant's argument concerning the denial of his motion for judgment of acquittal, defendant contends that the trial court erred in submitting the second charge of first-degree rape to the jury "after the state conceded that it had failed to prove [that] charge." We reject that contention. While the prosecutor stated *in arguments* during the motion for judgment of acquittal that the victim stated penetration occurred only one time, he also reiterated in those same arguments that there was sufficient evidence for the jury to find that defendant committed two counts of first-degree rape. In any event, the prosecutor's arguments, made outside the presence of the jury during the motion for judgment of acquittal, and later during closing argument, were not evidence that the jury could consider in its deliberations. Furthermore, the trial court instructed the jury that the lawyers' statements and arguments were not evidence. *See State v. Washington*, 355 Or 612, 660-61, 330 P3d 596, *cert den*, ___ US ___, 135 S Ct 685 (2014) ("absent an overwhelming probability that they would have been unable to do so, jurors are presumed to have followed their instructions," including the instruction that the "lawyer's statements and arguments are not evidence") (citing *State v. Smith*, 310 Or 1, 26, 791 P2d 836 (1990)). Thus, because the prosecutor's

arguments were not evidence that the jury could consider in deliberations, and because the jury was properly instructed on that point, the trial court did not err in submitting the second charge of first-degree rape to the jury.

In his first assignment of error, defendant contends that the trial court erred by overruling his objection to "the prosecutor's staging an emotional statement by" the victim. Defendant argues that the victim improperly vouched for her own credibility when, in response to the prosecutor's question, she looked defendant in the eye and told defendant "this is the truth."[1] The state responds that the victim's testimony was not impermissible vouching, because the victim was stating that she *herself* was telling the truth during her testimony.

Defendant's assignment of error stems from the following colloquy between the prosecutor and the victim during the victim's direct examination:

"Q: Now, [victim], I don't want to make you uncomfortable. But can you look your uncle [defendant] in the eye and tell him that this is the truth?

"A: Yes.

"Q: Would you?

"A: In Spanish or in English?

"Q: Whichever[.]

"[DEFENSE COUNSEL]: Judge, I would object. This is vouching.

"THE COURT: Vouching for whom?

"[DEFENSE COUNSEL]: She is vouching for her own credibility. It is kind of a dramatic presentation where she is just promising again that this is the truth, and it is being done *** kind [of] for the drama of it. I object. It is not appropriate for her to promise that this is the truth to the defendant.

---

[1] Defendant also argues that the prosecutor asking the victim to make the statement amounted to improper vouching of the victim's credibility. However, we do not address that argument, as defendant did not preserve it nor did he request plain error review. ORAP 5.45.

"THE COURT:    I'm going to allow it. Go ahead.

"[THE VICTIM]:    (Speaking Spanish) Este es la verdad.

"[PROSECUTOR]:    Can we have that interpreted back?

"THE INTERPRETER:    'This is the truth.'"

"It is settled in Oregon that one witness may not testify about the credibility of another witness." *State v. James,* 279 Or App 612, 622, 379 P3d 626 (2016) (citing *State v. Sanchez-Jacobo,* 250 Or App 621, 630, 282 P3d 880 (2012), *rev den,* 353 Or 280 (2013)). "[A] witness * * * may not give an opinion on whether he believes [another] witness is telling the truth." *State v. Middleton,* 294 Or 427, 438, 657 P2d 1215 (1983). However,

"[a] witness's assertion under oath that * * * she is being truthful simply is not the type of evidence that a jury might improperly view as a 'guarantee of the witness's veracity.' * * * Stated differently, a witness does not impermissibly 'vouch for' or 'bolster' * * * her *own* testimony by proclaiming truthfulness."

*Sanchez-Jacobo,* 250 Or App at 631 (emphasis in original; citations omitted). Here, the victim's testimony did not amount to impermissible vouching. As noted, vouching is improper when one witness testifies as to the credibility of another witness. In this case, the victim, in response to the prosecutor's question, proclaimed that she was telling the truth. By proclaiming her own truthfulness, the victim did not impermissibly "vouch for" her own testimony. Accordingly, the trial court properly overruled defendant's objection to the challenged testimony.

We turn to defendant's remaining assignment of error. In his fifth assignment of error, defendant argues that the trial court erred when it imposed $16,000 in attorney fees. Defendant acknowledges that his claim of error is unpreserved but asks us to review and correct the error as "an error of law apparent on the record," ORAP 5.45(1), or "plain error." In response, the state argues that any error is not plain. The state argues that the record contains some evidence that defendant may be able to pay the fee, and, thus, no error by the trial court is obvious.

"There are three requirements for plain error review under ORAP 5.45(1): (1) the error must be an error of law; (2) it must be apparent, in that the legal point is obvious, not reasonably in dispute; and (3) it must appear on the record such that we need not go outside the record or choose between competing inferences to find it, and the facts that comprise the error are irrefutable."

*State v. Coverstone*, 260 Or App 714, 715, 320 P3d 670 (2014) (internal quotation marks and brackets omitted).

Here, defendant contends that the trial court lacked the statutory authority to impose court-appointed attorney fees in the absence of any evidence of defendant's ability to pay, citing ORS 151.505(3) and ORS 161.665(4). "Each of those statutes provides that a court may not order a defendant to pay the fees unless the defendant 'is or may be able' to pay them." *Coverstone*, 260 Or App at 715. The state bears the burden of proving that that requirement has been satisfied. *Id.* (citing *State v. Kanuch*, 231 Or App 20, 24, 217 P3d 1082 (2009)).

Here, the state argues that the record contains sufficient evidence of defendant's ability to pay the court-appointed attorney fees. The state points to defense counsel's direct examination of defendant where defendant discussed his employment history. Defendant testified that he worked as a store manager from 2001-2005, in a restaurant in Mexico in 2006, as a lot attendant at Premier Ford from 2007-2008, and as a lot attendant at Gresham Ford from 2009-2012, when this case began. During sentencing, however, the state did not request that court-appointed attorney fees be imposed. In sentencing defendant to 600 months' imprisonment, the trial court stated, "I will impose the court-appointed attorney fees as well, given that [former appointed defense counsel] was involved in this case and received compensation." However, "there is no evidence that, as of the time of sentencing, defendant possessed assets sufficient to satisfy the award of fees or that he would receive income during his lengthy incarceration that could be applied toward that obligation." *State v. Mejia-Espinoza*, 267 Or App 682, 684, 341 P3d 180 (2014), *rev den*, 357 Or 164 (2015) (evidence that defendant had worked in the past

as a field worker and firefighter was insufficient to support a finding that defendant had the ability to pay attorney fees because the record contained no information about defendant's historic earnings or his future employability).

"When a plain error is established, we still must determine if it is appropriate to exercise our discretion to correct the error[.]" *Coverstone*, 260 Or App at 716 (citing *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382, 823 P2d 956 (1991)). In determining whether to exercise our discretion, we consider, among other things,

> "the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in another way[.]"

*Ailes*, 312 Or at 382 n 6. Here, the error is grave. Defendant was ordered to pay $16,000 and sentenced to consecutive mandatory-minimum sentences totaling 600 months' imprisonment. Defendant's earliest release date would occur when defendant is in his 80s, and the record contains no evidence that defendant could or would be able to pay that substantial sum. *See Coverstone*, 260 Or App at 717 (exercising discretion to correct error where the record contained no evidence of the defendant's financial resources and the defendant was sentenced to 375 months' imprisonment); *Mejia-Espinoza*, 267 Or App at 685 (exercising discretion to correct error under similar circumstances). Thus, the trial court plainly erred in imposing court-appointed attorney fees without sufficient evidence that defendant was or might be able to pay those fees, and we exercise our discretion to correct that error.

Portion of judgment requiring defendant to pay attorney fees reversed; otherwise affirmed.